TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00046-CR






Daniel Ray Parisher, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF SAN SABA COUNTY, 33RD JUDICIAL DISTRICT

NO. 5477, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Appellant Daniel Ray Parisher appeals his conviction for the possession of an
immediate precursor, pseudoephedrine, with the intent to unlawfully manufacture a controlled
substance, to wit: methamphetamine. See Tex. Health & Safety Code Ann. § 481.124(a)(2)
(West Supp. 2008). Appellant waived trial by jury and entered an "open" plea of guilty in a
bench trial. The trial court assessed his punishment at eleven years in the Institutional Division
of the Texas Department of Criminal Justice.


POINTS OF ERROR


 Appellant advances eight points of error, all claiming that the trial court abused its
discretion in denying the pretrial motion to suppress evidence for various reasons. (1)

PROCEDURAL HISTORY

 The indictment filed on August 4, 2005, alleged in pertinent part that appellant:



 on or about the 14th day of January 14, 2005, in the County of San Saba and the
State of Texas did then and there with intent to unlawfully manufacture a controlled
substance, to wit: methamphetamine, possess an immediate percursor, to wit:
ephedrine or pseudoephedrine. (2)


 Appellant's pretrial motion to suppress evidence was heard by the trial court on
March 17, 2006. The trial court denied the motion on August 4, 2006. Upon request, the trial court
in open court on September 8, 2006, made findings of facts and conclusions of law. See State
v. Oages, 210 S.W.3d 643, 644 (Tex. Crim. App. 2006); State v. Cullen, 195 S.W.3d 696, 699
(Tex. Crim. App. 2006). On May 7, 2007, appellant waived trial by jury and entered an open plea
of guilty to the indictment before a different district judge. Appellant judicially confessed in writing
to the offense charged--"Possession of certain chemical [pseudoephedrine] with intent to
manufacture a controlled substance." The court reporter's record of this guilty plea proceeding, if
any, is not in the appellate record. The judicial confession alone is sufficient to satisfy the statutory
evidence requirement as to felony guilty pleas before the trial court. See Tex. Code Crim. Proc. Ann.
art. 1.15 (West 2005); Dinnery v. State, 592 S.W.2d 343, 353 (Tex. Crim. App. 1979) (op. on reh'g). 
If other evidence was introduced, it is not a part of this record. There is certainly no chemical
analysis evidence or a showing of any evidence illegally seized or the date thereof.

 This guilty plea proceeding, being a unitary trial, (3) was recessed and recalled
on October 25, 2007, before the original trial judge, who assessed appellant's punishment at
eleven years' imprisonment.

 All of appellant's issues turn on the suppression hearing, so we examine the ever-
developing law regarding pretrial motions to suppress evidence. See Tex. Code Crim. Proc. Ann.
art. 28.01(6) (West 2006).


THE BURDEN OF PROOF

 When a defendant seeks to suppress evidence by a pretrial motion on the basis
of the Fourth Amendment to the United States Constitution, he, as the movant, bears the burden
of producing evidence that defeats the presumption of proper police conduct. Amador v. State,
221 S.W.3d 666, 672 (Tex. Crim. App. 2007); Russell v. State, 717 S.W.2d 7, 9 (Tex. Crim. App.
1986). A defendant meets this initial burden of proof by establishing that a search or seizure
occurred without a warrant. Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); Bishop
v. State, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002); Russell, 717 S.W.2d at 9. At this point, the
burden shifts to the State to prove that the search or seizure was reasonable without a warrant
under the totality of the circumstances. Russell, 717 S.W.2d at 9. If, however, the State introduces
or produces evidence of an executed search warrant based on probable cause in its underlying
affidavit, the burden shifts back to the defendant to show the invalidity of the search warrant. Ford,
158 S.W.2d at 492; Russell, 717 S.W.2d at 9; see also Davidson v. State, 249 S.W.3d 709, 717-18
(Tex. App.--Austin 2008, pet. ref'd).


THE TRIER OF FACT

 The trial court is the trier of fact at a pretrial hearing on a motion to suppress
evidence. Wiede v. State, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007); Allridge v. State,
850 S.W.2d 471, 492 (Tex. Crim. App. 1991). The trial court is free to believe or disbelieve all or
any part of a witness's testimony, even if the testimony is not controverted. State v. Ross, 32 S.W.3d
853, 855 (Tex. Crim. App. 2000). In reviewing the trial court's decision, we do not engage in our
own factual review. Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).


STANDARD OF REVIEW

 We generally review a trial court's ruling on a pretrial suppression motion for an
abuse of discretion. State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); Swain v. State,
181 S.W.3d 359, 365 (Tex. Crim. App. 2005); Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim.
App. 2002). The trial court's ruling should be upheld so long as it is within the zone of reasonable
disagreement. See Dixon, 206 S.W.3d at 590; Montgomery v. State, 810 S.W.2d 372, 391
(Tex. Crim. App. 1990) (op. on reh'g). This is the rather common standard of review regarding the
admissibility of evidence.

 When we review a trial court's ruling on a motion to suppress, we give great
deference to the trial court's determination of historical facts supported by the record, while we
review the application of the law to the facts de novo. Torres v. State, 182 S.W.3d 899, 902
(Tex. Crim. App. 2005); Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); State
v. Ross, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000); Carmouche v. State, 10 S.W.3d 323, 327;
Guzman v. State, 955 S.W.2d 85, 85-89 (Tex. Crim. App. 1997). (4)

 We must uphold the trial court's ruling if it is supported by the record and correct
under any theory of law applicable to the case, even if the trial court gave the wrong reason for
its ruling. State v. Stevens, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); Armendiarz v. State,
123 S.W.3d 401, 404 (Tex. Crim. App. 2003); State v. Steelman, 93 S.W.3d 102, 107 (Tex. Crim.
App. 2002).


A SPECIALIZED OBJECTION

 A pretrial motion to suppress evidence under article 28.01(6) (5) is nothing more than
a specialized objection to the admissibility of evidence. Galitz v. State, 617 S.W.2d 949, 952
n.10 (Tex. Crim. App. 1981). Therefore, it must meet the specificity requirement for an objection. 
Tex. R. App. P. 33.1(a)(1)(A); Flores v. State, 129 S.W.3d 169, 171 (Tex. App.--Corpus Christi
2004, no pet.); Carroll v. State, 911 S.W.2d 210, 218 (Tex. App.--Austin 1995, no pet.); Mayfield
v. State, 800 S.W.2d 932, 935 (Tex. App.--San Antonio 1990, no pet.). (6)

 In Martinez v. State, 17 S.W.3d 677 (Tex. Crim. App. 2000), the Texas Court
of Criminal Appeals recognized the specificity requirement as it applied to suppression motions. 
There, the court held that the defendant had procedurally defaulted the issues he raised on appeal
because the claims had not been made in his motion to suppress nor had he advanced any argument
on those issues in the trial court. Id. at 682-83. It is commonly required that the motion to suppress
evidence must specify with particularity the grounds upon which the motion is based, and the failure
to assert a particular ground operates as a waiver of the right to challenge the admissibility of the
evidence on that ground. W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment
§ 11.2(a) (4th ed. 2004). Martinez was cited as an illustration. Id. Professor LaFave suggested that
attorneys should avoid "shot gun" motions to suppress with conclusory language such as "illegal
arrest" and "violation of constitutional rights," and "specify exactly why arrests or resulting searches
are invalid." Id.

 In Swain, 181 S.W.3d at 365, the court held that because the allegations in the
suppression motion were global in nature and contained little more than citation to constitutional and
statutory provisions, they were not sufficiently specific to preserve the argument later made on
appeal. See also Rothstein v. State, 267 S.W.3d 366, 373 (Tex. App.--Houston [14th Dist.] 2008,
pet. ref'd) (holding that "generic" allegations in suppression motion were not specific enough to
preserve argument advanced for appellate review). (7)

 In his dissent in Torres v. State, Judge Holcomb noted that the defendant had filed
a boiler plate pretrial motion to suppress "any and all evidence seized or obtained as a result
of illegal acts." 182 S.W.3d at 904. He observed that the motion failed to specify what evidence
the defendant wanted to suppress asserting only that the evidence in question was the "fruit" of a
warrantless arrest, citing the Fourth Amendment. Id. Judge Holcomb believed that the failure to
specify what evidence the defendant wanted suppressed would have justified the trial court
in denying the suppression motion on that basis alone. Id. at 904 n.3 (citing Johnson v. State,
548 S.W.2d 700, 706 (Tex. Crim. App. 1977) (appellate court perceives no error in the trial court's
denial of motion to suppress "[s]ince the appellant fails to state what evidence, if any, was obtained
as a result of the alleged unlawful arrest. . . .")).

 Appellant's motion to suppress evidence is a boiler plate motion in general and
conclusory language. It does not specify what particular evidence he wanted suppressed. Citing
constitutional and statutory provisions, appellant alleged a search of his residence by virtue of a
warrant, a warrantless search (apparently of his house), and his unlawful and warrantless arrest. He
wanted "any and all tangible evidence," "evidence that may be used at trial," and "evidence"
resulting from his "arrest" to be suppressed. Undoubtedly, the trial court could have properly denied
the motion for the lack of specificity alone. Johnson, 548 S.W.2d at 706.

 Nevertheless, the trial court conducted a hearing, and we must look to the
record to determine what argument or issues, if any, were raised showing a violation of the
Fourth Amendment.


SUPPRESSION HEARING

 At the commencement of the hearing on appellant's motion to suppress evidence, it
appears clear that the parties understood that appellant was complaining of evidence obtained in
violation of the Fourth Amendment by (1) a search of his residence by virtue of a search warrant,
(2) a warrantless search, and (3) appellant's unlawful arrest. Appellant abandoned any allegations
in the motion as to involuntary statements.

 At the outset, appellant's counsel suggested a stipulation as to some of the facts, but
the State rejected the suggestion, claiming that it would shift the burden of proof. The trial court
then made clear that the initial burden of going forward with the evidence at the hearing would be
on appellant, the movant. Appellant called only two witnesses, and their testimony was limited to
the warrantless entry into appellant's residence. For whatever reason, neither party offered testimony
as to any search by virtue of a search warrant.

 The suppression hearing reflects that on some undisclosed night in January 2005, (8)
Officer Allen Brown of the City of San Saba received a telephone tip from an unidentified employee
of the Super S grocery in San Saba about suspicious activity by two individuals who had parked a
pickup truck at the store. Brown was informed that one individual came into the store "and bought
several items that were suspicious," and then the other person entered the store and bought "nearly
the same items." The nature of the items was not revealed. Before the pickup truck left the store's
parking lot, its license plate was noted and given to Officer Brown. His investigation showed that
the truck was registered to Sandra and Daniel Parisher.

 Officer Brown contacted Deputy Sheriff David Jenkins of San Saba County who
knew where the Parishers lived. The officers had no arrest or search warrant, but decided to use
the "knock and talk" approach. They drove from San Saba to Cherokee, and then further on a county
road, turning onto the unimproved road or drive leading up to the Parishers' rural home. They had
driven approximately thirty miles. Officer Brown recalled that the gate was open to the Parishers'
property and that he did not see any "no trespassing signs." Brown observed that it was nighttime.

 The officers parked their vehicle and approached the house and its front door. There
was no testimony about barriers or fences surrounding the house. Officer Brown commenced
knocking on the front door while Deputy Jenkins "covered" him from the side of the door from
which position he could see through a window a man other than Parisher. The door appeared
"loose," (9) so Officer Brown knocked to the side of the door. When Sandra Parisher answered the
knock and opened the door, Officer Brown identified himself and Deputy Jenkins as officers
and asked to come in and "talk about some information." He stated that Sandra Parisher looked
at her husband, "stuttered for a second," then said, "yes, you can" or "come on in." Officer Brown
denied forcing his way into the house or threatening anyone in any way. His testimony was that
Mrs. Parisher voluntarily consented to their entry into the residence.

 Officer Brown stated that after he and Deputy Jenkins were three or four feet inside
the dining room with Sandra Parisher's consent, he was able to see in "plain view" on a table in the
next room, items such as "multiple mason jars, some open, containing things, alcohol, clear--clear
tubing material, multiple coffee filters, matches which had been cut with the heads cut off of
them and latex gloves." Later, Officer Brown, who had been a peace officer for almost ten years
and had handled narcotic investigations, described the items seen as "multiple items consistent with
paraphernalia used to manufacture methamphetamine." Again describing the items Officer Brown
stated that the "cut matches, the mason jars, the way they were laid at the table with working tools,
the coffee filters spread out on the coffee table like they were--those items literally jump out at
you when they're in the order that they're in." (10) Other than Officer Brown's personal observations,
there was no testimony of a search or seizure of any item. After the observations, Officer Brown
testified that the officers made a protective sweep of the house because another man had been seen
in the house before the officers entered. Sandra Parisher first denied that anyone else was present,
then acknowledged a "friend" was in the house. The officers found a man named Napoles on
the commode in the bathroom with undescribed items in the commode. Appellant, his wife, and
Napoles were detained at the time, but what action was taken thereafter with regards to appellant
and others who were detained is not revealed. There is nothing in the record to show any search
or pat-down of appellant and the other individuals or that any items of evidence were obtained. 
Officer Brown testified that he telephoned the narcotic officers, but he made clear that he was not
present if any search by warrant took place. What action, if any, was taken with regard to the items
personally observed by Officer Brown is not reflected. 

 After Officer Brown's testimony, appellant urged that the burden of proof had
shifted to the State, but the trial court ruled no search had been established. Appellant then testified
that about 9:00 p.m. on a night in January 2005, there was a knock at the door of his small rural
home. He thought it was a joke when a voice stated that the visitors were "Officer Brown and
Deputy Jenkins." As appellant recalled, Officer Brown entered the house before appellant's wife
could open the door, stating that it was cold outside, and asking to come in. Appellant related that
neither he nor his wife gave consent for entry into their home. Appellant said that Deputy Jenkins
entered behind Officer Brown with his pistol drawn and placed the pistol near appellant's head.

 Appellant took the position that the officers could not see into the next room
from their vantage point in the living room. Appellant was not asked about the items that the officers
claimed to have seen in "plain view." Questions were asked about cattle guards, gates, and signs. 
Appellant testified that there were several "no trespassing signs" on the approach to his property,
that he left the gate open that night so Napoles, a friend, could enter the property, and that neighbors
came to the front door from time to time. Appellant testified that the acreage upon which the house
was located was partially in San Saba county and partially in Llano county, and his mailing address
had been recently changed from Llano to Cherokee, Texas. Appellant did not testify about any
subsequent search by warrant.

 Officer Brown was briefly recalled as a witness. At the conclusion of his
testimony, the trial court inquired if the State had evidence to offer. When the State indicated it
had none to offer, the trial court called on appellant's counsel for argument. There were no formal
announcements of "resting" or "closing." Except for brief arguments, the suppression hearing
terminated. No search warrant or underlying affidavit were marked for identification, offered,
or introduced into evidence. There was no testimony about any search by virtue of a warrant or that
there were any "fruits" of any such search if a warrant was executed. The suppression hearing
furnishes the only evidentiary basis for appellant's contentions.


FINDINGS AND CONCLUSIONS

 The suppression hearing was held on March 17, 2006. The motion to suppress
was denied on August 4, 2006. The trial court filed its findings of fact and conclusions of law on
September 6, 2006, as follows: 


 (1) The Court finds that the officers did not observe any "no trespassing" signs
or any other notice of privacy. The Court finds that no such signs were
readily visible.[ (11)] The Court concludes that no trespass occurred.


 (2) The Court finds that Sandra Parisher had an equal right of control over the
subject premises.


 (3) The Court finds that Sandra Parisher voluntarily admitted the officers into the
residence.


 (4) The Court finds that evidence was observed in plain view upon the officers'
entry into the premises.


 (5) The Court finds that a third subject had been observed but was absent from
the front room of the house upon the officers' entry.


 (6) The Court concludes that therefore a safety sweep of the house was justified
which yielded the third subject and led to additional contraband which the
Court finds was in the plain view of the officers on the further sweep of the
house.


 (7) The Court finds that the Parisher residence is located at least in part in San
Saba County.


 (8) The Court finds that probable cause existed for issuance of the search warrant
by Judge Leslie Dawson.


 (9) The Court finds that there was no locked gate or other exclusion indicia
indicating an expectation of privacy beyond that which would allow the
officers to approach the house.



 There were no objections to these findings and conclusions. Appellant made no
request for additional findings. We observe, however, that there is no support in this record for
the finding that in their protective sweep, the officers saw "additional contraband." Further, as
noted, there is no evidence of a search warrant or its underlying affidavit being introduced or being
a part of this record. The trial court's finding and conclusion that probable cause existed for the
issuance of a search warrant is not supported by this record. We cannot give credence to findings
and conclusions as to either "additional contraband" or the existence of "probable cause for the
issuance of a search warrant."

 The State has attached to its brief an affidavit and search warrant issued at 1:15 a.m.
on January 14, 2005. There is nothing to show that the search warrant was ever executed and
no testimony that any items were found and seized. Moreover, affidavits, documents, exhibits, and
statements attached to appellate briefs are not evidence and cannot be considered by an appellate
court on review. Cook v. State, 741 S.W.2d 928, 938-39 (Tex. Crim. App. 1987); Webber v. State,
21 S.W.3d 726, 731 (Tex. App.--Austin 2000, pet. ref'd); Miranda v. State, 813 S.W.2d 724, 738
(Tex. App.--San Antonio 1991, pet. ref'd). Further, assertions in briefs not supported by the record
cannot be accepted as fact. Vanderbilt v. State, 629 S.W.2d 709, 717 (Tex. Crim. App. 1981). (12)
Moveover, the simple fact that there was "probable cause" for the issuance of a search warrant is
meaningless here without a showing that the warrant was actually issued, executed, and that certain
"fruits" were thereby obtained.

 Because the motion to suppress was not relitigated by the parties during trial, our
review of the trial court's ruling is limited to the evidence that was before the court during the
pretrial suppression hearing. See Rangel v. State, 250 S.W.3d 96, 97-98 (Tex. Crim. App. 2008);
Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); Rachal v. State, 917 S.W.2d
799, 809 (Tex. Crim. App. 1996) ("[I]n determining whether a trial court's decision is supported
by the record, we generally consider only the evidence adduced at the suppression hearing
because the ruling was based on it rather than evidence introduced later."). "Perhaps the most
basic characteristic of the appellate record is that it is limited to matters before the trial court." 
43A George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice And Procedure
§ 43.306 (2d ed. 2001).






THE PLAIN VIEW DOCTRINE

 The Fourth Amendment to the United States Constitution protects against
unreasonable searches and seizures. U.S. Const. amend. IV; Minnesota v. Carter, 525 U.S. 83, 88
(1979). The Fourth Amendment protects people and not places. Long v. State, 532 S.W.2d 591, 594
(Tex. Crim. App. 1975).

 A search conducted without a warrant issued upon probable cause is per se
unreasonable subject only to a few specifically established and well-delineated exceptions. See
Reasor v. State, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000); Duhig v. State, 171 S.W.3d 631,
635 (Tex. App.--Houston [14th Dist.] 2005, pet. ref'd). One of those exceptions is the "plain view"
doctrine. Texas v. Brown, 460 U.S. 730, 736 (1983). Although commonly classified as an exception
to the warrant requirement, the "plain view" doctrine is not truly an exception because neither
observation nor the seizure of property in plain view involves an invasion of privacy and is
presumptively reasonable. Walter v. State, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000); see also
Horton v. California, 496 U.S. 128, 135-36 (1990). It is not a search to observe that which is open
to view. Long, 532 S.W.2d at 594. Observing and even seizing items in plain view do not run afoul
of the Fourth Amendment. Walter, 28 S.W.3d at 541.

 The "plain view" doctrine requires only that (1) law enforcement officials have a
right to be where they are, and (2) it is immediately apparent that the item observed or seized may
constitute evidence, that is, there is probable cause to associate the item with criminal activity. (13) 
Walter, 28 S.W.3d at 541; Ramos v. State, 934 S.W.2d 358, 365 (Tex. Crim. App. 1996); Arrick
v. State, 107 S.W.3d 710, 719 (Tex. App.--Austin 2003, pet. ref'd).

 In determining whether an officer had the right to be where he was, the
Supreme Court requires that the officer not violate the Fourth Amendment in arriving at the
place from which the evidence could be plainly viewed. Horton, 496 U.S. at 136; see Walter,
28 S.W.3d at 541.

 Absent express orders from the person in possession of the property not to trespass,
anyone, including a law-enforcement officer, has the right to approach the door of a residence
and knock on the door. Cornealius v. State, 900 S.W.2d 731, 733-34 (Tex. Crim. App. 1995);
Duhig, 171 S.W.3d at 635. Appellant contends that on the occasion in question the officers
unlawfully trespassed on his property. He argues that the officers did not have consent to enter upon
the property when they had notice that entry was forbidden by "no trespassing signs" posted on the
property. See Tex. Penal Code Ann. § 30.05(a)(1), (b)(2)(C) (West Supp. 2008). (14) The trial court
found that the officers did not observe any "no trespassing signs or any other notice of privacy and
that "no such signs were readily visible" or were reasonably likely to come to the attention of
the officers. (15) The trial court further found there were no locked gates "or other indicia indicating
an expectation of privacy." Appellant acknowledged that he had purposely left the gate open on
the night in question. There was also evidence that neighbors visited and used the drive to approach
appellant's house. There was no evidence of any barrier or fence that the officers had to cross. The
trial court concluded that the officers did not trespass onto the property. We agree that the record
supports the trial court's findings. The officers had a right to approach the front door to contact the
Parishers. Duhig, 171 S.W.3d at 635.

 While at or approaching the front door, the officers from their vantage point were
free to observe evidence or things in plain view. Id. at 636. They saw through a front window of
the Parishers' house several individuals in the living room. This "plain view" observation involved
no invasion of privacy. Id. What a person knowingly exposes to the public, even in his own home,
is not a search subject to Fourth Amendment protection. Id. A search implies a prying into hidden
places for that which is contraband. Id. When a police officer on legitimate business simply walks
up to a door and knocks, he visits the house in the same lawful way that a private citizen does. The
ensuing "knock and talk" does not implicate the Fourth Amendment or its exceptions because
no search or seizure occurs. United States v. Walters, 529 F. Supp. 2d 628, 638 (E.D. Tex. 2007)
(citing United States v. Thomas, 120 F.3d 564, 571 (5th Cir. 1997)).

 Here, the suppression hearing testimony reflected a conflict as to Sandra Parisher's
consent to enter the house. Officer Brown stated that Sandra Parisher answered his knock and,
after looking at her husband, invited the officers into the house in response to Officer Brown's
request. The officer testified that no force was used and that no one was threatened. Appellant,
however, stated that neither he nor his wife gave consent for the officers to enter the house, and
that Deputy Jenkins came in with a pistol pointed at him. The trial court, as the trier of fact, found
that Sandra Parisher had equal control of the premises and voluntarily admitted the officers. The
trial court believed Officer Brown and not the appellant.

 When the officers were legally three or four feet in the living room, Officer Brown
observed, in plain view, articles that he believed, based on his experience, were evidence of criminal
activity in the manufacture of methamphetamine. Thereafter, he detained the Parishers.

 It is apparent from the record that Officer Brown had learned that another man
was in the house. Upon inquiry, Sandra Parisher first denied anyone else was present, but then
recanted and said a "friend" was there. Officer Brown did not know the identity of the man and did
not know if he was armed or dangerous, or whether he might destroy evidence. Officer Brown
had a reasonable belief that a protective sweep was necessary for the safety of the officers. The
sweep was brief and cursory and resulted in the discovery of the other man in the bathroom. See
Ramirez v. State, 105 S.W.3d 730, 742 (Tex. App.--Austin 2003, no pet.). The trial court found the
protective sweep was justified. The Fourth Amendment permits a properly limited protective sweep
in conjunction with an in-house arrest when the officer possesses a reasonable belief that the area
to be swept harbors an individual posing a danger to those on the current scene. Maryland v. Buie,
494 U.S. 325, 337 (1990); Reasor, 12 S.W.3d at 816; see also 40 George E. Dix & Robert O.
Dawson, Texas Practice: Criminal Practice And Procedure § 12.21 (2d ed. 2001).

 We grant deference to those factual findings of the trial court that are supported by
the record, and we agree, after a de novo review with the trial court's legal conclusions.


THE INITIAL POINT

 In his first point of error, appellant complains that the trial court abused its discretion
in denying the motion to suppress evidence because it improperly placed the burden on appellant for
"warrantless entry and search of appellant's residence."

 At no time did appellant object to having the burden of proof or persuasion placed
on him so as to preserve any error for review. See Tex. R. App. P. 33.1(a)(1)(A); Broxton v. State,
909 S.W.2d 912, 918 (Tex. Crim. App. 1995). We have previously discussed the burden of proof in
suppression hearings. The trial court properly placed the initial burden upon appellant, the movant. 
After Officer Brown's original testimony, appellant inquired if the burden had shifted to the State. 
The trial court pointed out that no search or other violation of the Fourth Amendment had been
shown at that point, and that the initial burden to defeat the presumption of proper police conduct
remained with appellant. No further mention of "burden" was made.

 The hearing encompassed only the warrantless entry into appellant's house with his
wife's consent as found by the trial court. The testimony did not show that any items of evidence
were ever obtained, seized, or taken into custody by the State. Officer Brown's mere observation,
"in plain view," of certain items was not a "search" in violation of the Fourth Amendment. Walter,
28 S.W.3d at 541. The first point of error is overruled.


POINTS OF ERROR TWO THROUGH EIGHT

 In points of error two through eight, appellant's premise in each point of error is
not supported by the record before this Court. In each point, appellant urges that the trial court
abused its discretion in denying the motion to suppress evidence because the State obtained evidence
in violation of the Fourth Amendment, giving various reasons in each point. The record does
not reflect that any items of evidence were obtained, seized, or taken into custody by the State
from appellant's residence or from his person. Further, Officer Brown's observation of certain
items that he said were in plain view was not a violation of the Fourth Amendment, Horton, 496 U.S.
at 135-36, and this would have been true even if the items had been seized, id. at 136; Walter,
28 S.W.3d at 541. For this reason alone, points of error two through eight are without merit.

 Points of error two, three, four and eight involving a claimed trespass, an improper
"knock and talk" tactic, a lack of consent by Sandra Parisher, and an unwarranted protective sweep
were considered under our previous discussion of the "plain-view" doctrine.

 Points of error five through seven involve claims that Sandra Parisher was "seized"
after the door was opened and that this tainted her consent, that both Parishers were "seized," and
that the State failed to show appellant's consent to the entry as he was a co-tenant and was present
at the time. These contentions were not set forth in appellant's motion to suppress evidence
nor were they advanced in the argument at the suppression hearing. By not raising these contentions
until his appeal, appellant has procedurally defaulted these claims. See Martinez, 17 S.W.3d
at 683. (16) To preserve error on appeal, the point of error must comport with the objection made
at trial. See Swain, 181 S.W.3d at 367; Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). 
A trial objection based on one legal theory may not be used to support a different legal theory
on appeal. Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990); Delamora v. State,
128 S.W.3d 344, 363 n.11 (Tex. App.--Austin 2004, pet. ref'd). Points of error two through eight
are overruled.


 The trial court did not abuse its discretion in overruling the motion to suppress
evidence. The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices Waldrop, Henson and Onion*

Affirmed

Filed: June 5, 2009

Do Not Publish











* Before John F. Onion, Jr., Presiding Judge (retired), Texas Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 2005).
1. In his initial point of error appellant alleges that the trial court abused its discretion in
denying the suppression motion because the trial court improperly placed the burden of proof on
appellant during the entire hearing.


 In the other seven points of error appellant argues that the trial court abused its discretion
in denying the motion to suppress when the hearing showed evidence was illegally obtained by
the State in violation of the Fourth Amendment to the United States Constitution and article I,
section 9 of the Texas Constitution because:


 (2) the police officers trespassed onto appellant's private property, peered
through a window and "feathered, moved, or opened a door" to the residence;


 (3) the police officers engaged in a coercive and improper "knock and talk"
tactic;


 (4) there was a failure by the State to show by clear and convincing evidence that
appellant's wife consented to the entry of the officers into the residence;


 (5) appellant's wife was "seized" for Fourth Amendment purposes when the door
was opened thereby tainting any consent given;


 (6) appellant, a co-tenant with his wife, did not consent to the warrantless entry;


 (7) appellant and his wife were both illegally "seized" by the officers upon their
entry into the house; and 


 (8) the officers conducted an improper protective sweep of the residence.


 In his points of error as in his brief, appellant never tells us what evidence was "illegally
obtained" by the State.


 Moreover, appellant has not advanced any argument separately or otherwise claiming
greater protection from the state constitution than that afforded by the Fourth Amendment to the
federal constitution. Thus, appellant has waived his state constitutional issues. We will not address
them. See Bell v. State, 90 S.W.3d 301, 305 (Tex. Crim. App. 2002); Balentine v. State, 71 S.W.3d
763, 772 n.8 (Tex. Crim. App. 2002); Hulit v. State, 982 S.W.2d 431, 436 (Tex. Crim. App. 1998);
Franks v. State, 241 S.W.3d 135, 141 (Tex. App.--Austin 2007, pet. ref'd).
2. The indictment is endorsed with the label: "Possession of Certain Chemical with Intent
to Manufacture a Controlled Substance." This same description of the offense is set forth in the
formal judgment of this case.
3. There is no proper bifurcation of a unitary trial on a guilty plea in a felony case before
the trial court where a jury trial has been waived. See Barfield v. State, 63 S.W.3d 446, 450
(Tex. Crim. App. 2001); Saldana v. State, 150 S.W.3d 486, 489 (Tex. App.--Austin 2004, no pet.);
43 George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice And Procedure § 38.14
(West Supp. 2008).
4. The Guzman addition to the rather straight forward standard above is described in Amador
v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) as follows:


 Appellate courts must give almost total deference to a trial court's determination of
the historical facts that the record supports especially when the trial court's fact
findings are based on an evaluation of credibility and demeanor. This "deferential
standard of review in Guzman also applies to a trial court's determination of
historical facts when that determination is based on a videotape recording admitted
into evidence at a suppression hearing." Appellate courts also afford the same level
of deference to a trial court's ruling on "application of law to fact questions," or
"mixed questions of law and fact," if the resolution of those questions turns on an
evaluation of credibility and demeanor. The appellate courts review de novo "mixed
questions of law and fact" that do not depend upon credibility and demeanor.


Id. at 673; see also Montanez v. State, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006).


 Claiming it to be consistent with the above described standard of review, the Texas Court
of Criminal Appeals has recently restated the standard in State v. Kelly, 204 S.W.3d 808 (Tex. Crim.
App. 2006) by stating:


 In reviewing a trial court's ruling on a motion to suppress, an appellate court
must view the evidence in the light most favorable to the trial court's ruling. When
a trial court makes explicit fact findings, the appellate court determines whether the
evidence (viewed in the light most favorable to the trial court's ruling) supports these
fact findings. The appellate court then reviews the trial court's legal ruling de novo
unless the trial court's supported-by-the record explicit fact findings are also
dispositive of the legal ruling.


 The appellate standard of review is very similar when the record is silent on the
reasons for the trial court's ruling or when the trial court makes no explicit fact
findings and neither party has timely requested findings and conclusions from the
trial court. Under these circumstances, the appellate court implies the necessary fact
findings that would support the trial court's ruling if the evidence (viewed in the light
most favorable to the trial court's ruling) supports these implied fact findings. The
appellate court then reviews the trial court's legal ruling de novo unless the
supported-by-the-record implied fact findings are also dispositive of the legal ruling.


Id. at 818 (citations omitted); see also id. at 819, n.21. For a general discussion of the standard, see
Ford v. State, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).
5. Tex. Code Crim. Proc. Ann. art. 28.01(6) (West 2006).
6. An objection must be timely made with sufficient specificity to make the trial court
aware of the complaint. Tex. R. App. P. 33.1(a)(1)(A); Broxton v. State, 909 S.W.2d 912,
918 (Tex. Crim. App. 1995); Morrison v. State, 71 S.W.3d 821, 826 (Tex. App.--Corpus Christi
2002, no pet.). A pretrial motion to suppress evidence must meet all the requirements of
Rule 33.1(a)(1)(A) of the Texas Rules of Appellate Procedure. See Krause v. State, 243 S.W.3d 95,
102 (Tex. App.--Houston [1st Dist.] 2007, pet. ref'd).
7. To preserve error for appellate review, the point of error must comport with the
objection made at trial. Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); Tejos v. State,
243 S.W.3d 30, 48 (Tex. App.--Houston [1st Dist.] 2007, pet. ref'd). A trial objection based on
one legal theory may not be used to support a different legal theory on appeal. Delamora v . State,
128 S.W.3d 344, 363 n.11 (Tex. App.--Austin 2004, pet. ref'd).
8. Both parties assert in their briefs that it was January 14, 2005, but the record does not
support these assertions. Officer Allen Brown gave no date or time in his testimony. Appellant
simply stated that the incident occurred about nine o'clock on a night in January 2005. We glean
elsewhere from the record that it was possibly January 13, 2005.
9. Appellant in his testimony acknowledged that the front door was in need of repair--a hinge
needed to be replaced or repaired.
10. The items described by Officer Brown were on the dining room table and a coffee table. 
Photographs of both tables were introduced as the items described.
11. The trial court later in open court orally amended its findings to reflect that there were not
any "no trespassing" signs reasonably likely to come to the attention of the officers. See Tex. Penal
Code Ann. § 30.05(b)(2)(C) (West Supp. 2008).
12. The search warrant and affidavit attached to the State's brief were never marked for
identification, offered or introduced in evidence, or shown to have been placed in the possession of
the clerk or court reporter and was not designated as a part of the appellate record.
13. "[P]robable cause is a flexible, common-sense standard. It merely requires that the facts
available to the officer would warrant a man of reasonable caution in the belief, that certain items
may be contraband or stolen property or useful as evidence of a crime." Texas v. Brown, 460 U.S.
730, 742 (1983) (citations omitted).
14. The current code is cited for convenience. The law in the provisions cited has not changed
since January 2005.
15. This latter statement came as an oral amendment to the findings of fact.
16. It is noted that appellant does not in either his suppression motion or his appellate brief
specify, point out, or list what evidence he is claiming should have been suppressed.